UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER HOPKINS,
individually and on behalf of all other
similarly situated,

            Plaintiff,

   v.

HOMELIGHT, INC., a Delaware
corporation,

            Defendant.

CASE NO. 26-cv-5017-BHS

ORDER

THIS MATTER is before the Court on defendant HomeLight's motion to dismiss plaintiff Christopher Hopkins' first amended complaint. Dkt. 19.

This putative class action arises from alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. On October 22, 2025, Hopkins received a telephone call from HomeLight's agent offering to connect him to a real estate agent for help in selling his home. Dkt. 16 at 8. Hopkins asked the agent to stop calling him. *Id.* HomeLight called Hopkins three more times that day and two more times the next. *Id.* at 8–9. On October 23, 2025, HomeLight sent Hopkins multiple text messages

ORDER - 1

thanking him for expressing interest in selling his home and offering to recommend a list of real estate agents. *Id*. at 9. Hopkins asked the sender to "[p]lease stop all communication" and received notice that he had been unsubscribed. *Id*. Hopkins continued to receive messages until November 30, 2025, despite repeated attempts to stop communications.

On January 8, 2026, Hopkins sued HomeLight, asserting two statutory claims under 47 U.S.C. § 227(c)(5), each based on a different implementing regulation. In Count One, he alleges that HomeLight sent him unsolicited phone calls and text messages despite his phone number being listed on the national "Do Not Call" (DNC) registry, in violation of 47 C.F.R. § 64.1200(c). Dkt. 16 at 21–23. In Count 2, he alleges that HomeLight either ignored his "opt-out" requests or failed to maintain internal procedures to comply with such requests, in violation of 47 C.F.R. § 64.1200(d). *Id.* at 23–26. He seeks injunctive relief and statutory damages on behalf of himself and the putative class.

HomeLight moves to dismiss, arguing that 47 U.S.C. § 227(c)(5) applies exclusively to telephone *calls*, rather than text messages. Dkt. 19 at 9. It asserts, however, that even if the statute did apply to text messages, Hopkins has failed to plausibly allege that the messages qualified as solicitations within the meaning of the TCPA. *Id.* at 17. HomeLight further contends that Hopkins failed to allege that it lacked internal DNC procedures, a necessary element of Count 2. *Id.* at 19–22.

Hopkins responds that the Ninth Circuit has already held that the word "call" in the TCPA includes text messages, and that this authority "flatly foreclose[s]" HomeLight's argument. Dkt. 20 at 2 (citing *Satterfield v. Simon & Schuster, Inc.*, 569

ORDER - 2

F.3d 946 (9th Cir. 2009) and *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026)). He argues that HomeLight's calls and text messages are "solicitations" because they are meant to "encourage the purchase of a service," and are "commercial in nature." *Id.* at 25. Hopkins makes no rebuttal argument as to the plausibility of Count 2.

## I.   DISCUSSION

### A.   Legal Standard

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although courts must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The Court's review is "limited to the complaint, materials incorporated into the complaint by reference, and matters of which the Court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

**B.      Text messages qualify as a call under 47 U.S.C. § 227(c).**

In 1991, Congress enacted the TCPA "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). It provides a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed[.]" *Id*. at § 227(c)(5). Congress authorized the FCC to "prescribe regulations to implement methods and procedures for protecting the privacy rights described[.]" *Id*. at § 227(c)(2).

HomeLight contends that Hopkins' complaint fails because text messages are not covered under § 227(c). Dkt. 19 at 9. It explains that § 227(c) refers only to a "telephone call," and that at the time of the statute's enactment in 1991, "telephone call" would not have included text messages or SMS messages. *Id.* at 10. It asserts that the "the statute's history, plain language, and overall structure confirms that . . . the omission of text messages from that section was deliberate." *Id.* HomeLight distinguishes the Ninth Circuit's decisions in *Satterfield* and *Howard* to be confined only to § 227(b) as opposed to § 227(c). *Id.* at 14.

Hopkins responds that while those decisions arose in the context of § 227(b), neither court limited its holding to only that provision. Instead, he asserts that a broad

ORDER - 4

reading of "call" is "directly in line with how the [TCPA] has been applied for decades." Dkt. 20 at 2. He relies on the TCPA's plain language, its structure and purpose, and FCC regulations to support his conclusion that text messages are included in § 227(c).

The Court agrees with Hopkins. Binding Ninth Circuit precedent resolves this issue. In *Satterfield*, the Ninth Circuit analyzed whether a text message falls within the meaning of "call" as used in § 227(b)(1).[1] 569 F.3d 946. Applying *Chevron*'s[2] two-step analysis, the Ninth Circuit first concluded that the statute was ambiguous, noting that text messaging was not available at the time of the statute's enactment. *Id.* at 954. But in making that determination, the Court also found that the TCPA's language, including the "ordinary, contemporary, common meaning" of the term "call," and the TCPA's stated purpose to protect privacy rights, supported the conclusion that text messages fit within the statute. *Id.* at 953–54 (Call means "to communicate with or try to get into communication with a person by a telephone.") (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 318 (2002); *id.* at n.3 ("Congress used the word 'call' to refer to an attempt to communicate by telephone.").

The Ninth Circuit next considered whether the FCC's interpretation of the term "call" to include a "text message" was reasonable. *Id.* at 952; *see In re Rules and*

---

[1]  Relevant here, 47 U.S.C. § 227(b)(1)(A) makes it unlawful "to make any *call* . . . using any automatic telephone dialing system or an artificial or prerecorded voice," (emphasis added), and § 227(b)(1)(B) makes it unlawful "to initiate any *telephone call* . . . using an artificial or prerecorded voice to deliver a message," (emphasis added).

[2]  Under *Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984), an agency interpretation has the force of law if the (1) "call" is not defined by the TCPA and (2) if the FCC's interpretation of the statute is reasonable. *Chevron* is no longer operative. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 377 (2024).

ORDER - 5

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) ("This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service."). The Court concluded yes, explaining that it was "consistent with the dictionary's definition of call" and was "also consistent with the purpose of the TCPA." *Id.* at 954. Deferring to the FCC's interpretation, the Ninth Circuit broadly held that "a text message is a 'call' within the TCPA." *Id.*

This holding was recently affirmed in *Howard*, where the Ninth Circuit again addressed whether § 227(b)(1) applies to text messages. 164 F.4th 1119. Applying de novo review, the Ninth Circuit confirmed that even in the absence of *Chevron* deference, "a 'text message' constitutes a 'call' within the meaning of the TCPA." 164 F.4th at 1123.

While both *Satterfield* and *Howard* arose in the context of § 227(b), the same logic and reasoning underlying those decisions applies with equal force to § 227(c). Section 227(c) provides a private right of action for "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed[.]" *Id.* at § 227(c) (emphasis added). Text messages fall within the definition of a "telephone call" because, as explained in *Satterfield* and *Howard*, both the ordinary meaning of the term "call" and the TCPA's purpose support that interpretation. The Court is unpersuaded that the meaning of "call" differs merely because it is used as a noun in § 227(c) rather than as a verb in § 227(b). There is no

difference in the meaning of "to make a call" or "to receive a telephone call." Nothing in the statutory text or ordinary use of the term supports assigning a different meaning based solely on its grammatical form.

This is consistent with the 2024 FCC regulation explicitly confirming that § 227(c) applies to text messages: "The Commission adopts the proposal to codify the National DNC Registry's existing protections to text messages. Texters must have the consumer's express invitation or permission before sending a marketing text to a wireless number in the DNC Registry." *Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, 89 Fed. Reg. 5098, 5101 (Jan. 26, 2024).

Although HomeLight cites to several district court opinions concluding that § 227(c) does not apply to text messages, each of those decisions is from outside of this Circuit.[3] By contrast, district courts applying *Satterfield* and *Howard* within this Circuit have made clear that text messages must constitute calls under § 227(c) as well. *See, e.g., Rebecka Miller v. Direct Gen. Ins. Agency, Inc*, No. 2:26-CV-01480-MWC-SSC, 2026 WL 1708531, at *4 (C.D. Cal. June 8, 2026); *D'Agostino v. Circle K Stores Inc.*, No.

---

[3] Dkt. 19 at 7–8; *see, e.g., Davis v. CVS Pharmacy, Inc.*, 797 F.Supp.3d 1270, 1272 (N.D. Fla. 2025); *El-Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *Jones v. Blackstone Med. Servs.*, LLC, 792 F.Supp.3d 894. 899-902 (C.D. Ill. 2025), *appeal filed sub nom.*, No. 25-2398 (7th Cir., August 12, 2025); *Radvansky v. 1-800-FLOWERS.COM, Inc.*, 2026 WL 456919, at *3-5 (N.D. Ga. Feb. 17, 2026); *Stockdale v. Skymount Property Group, LLC*, 2026 WL 591842, at *2-3 (N.D. Ohio Mar. 3, 2026); *James v. Smarter Contact, Inc.*, 2026 WL 879244, at *3-5 (M.D. Fla. Mar. 31, 2026); *Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *3 (S.D. Ind. Mar. 26, 2026*); Richards v. Shein Distrib. Corp.*, 2026 WL 847584, at *3 (S.D. Ind. Mar. 26, 2026).

CV-26-01225-PHX-JAT, 2026 WL 1098239, at *5 (D. Ariz. Apr. 23, 2026); *Wilson v. Cirkul Inc.*, No. 6:25-cv-02036-AP, 2026 WL 1508003, at *5 (D. Or. Apr. 14, 2026); *Taha v. Momentive Software, Inc.*, No. 8:25-cv-02330-DOC-JDE, 2026 WL 974297, at *3 (C.D. Cal. Mar. 11, 2026); *Esquivel v. Mona Lee, Inc.*, No. 3:25-CV-00607-H-BLM, 2025 WL 3275607, at *3 (S.D. Cal. Nov. 24, 2025).

The Court applies the governing law of this Circuit. Text messages constitute a call under § 227(c).

**C.      Hopkins states a claim under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).**

HomeLight also contends that Hopkins fails to plausibly allege that HomeLight's messages qualify as a "telephone solicitation" or "telemarketing call," as defined by the TCPA. Dkt. 19 at 17. It asserts that Hopkins provides no information about the actual content of the messages sufficient to prove that he received a "telephone solicitation" rather than an "unwanted" phone call. *Id*. It contends that because Hopkins admits that HomeLight's text messages "'did not try to sell him' anything on their face," his claim must fail. Dkt. 21 at 13. HomeLight also contends that Hopkins fails to plausibly allege that he did not consent to receiving the calls or that he did not have an established business relationship with the company. Dkt. 19 at 24. It contends that HomeLight's texts "were merely responding to an inquiry." Dkt. 21 at 14.

Hopkins argues that HomeLight's "calls and texts were meant to encourage the purchase of a service (the hiring of Defendant's preferred brokers), were of a commercial nature, and were just as much a solicitation as if the broker had cold-called Mr. Hopkins trying to sell his services to Mr. Hopkins directly." *Id.* at 25. He asserts that the *"only*

reason" HomeLight messaged him was to encourage him into hiring its preferred realtor, allowing HomeLight to receive a commission from the sale. *Id.*

The TCPA prohibits an entity from making more than one "telephone solicitation" to the same person within a twelve-month period. 47 U.S.C. § 227(c)(5). 47 C.F.R. § 64.1200(c) prohibits a person or entity from initiating a "telephone solicitation to [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4). This definition encompasses calls "referring a consumer to another entity . . . if the purpose of the referral is to encourage a purchase, even if a purchase from another entity or a future purchase." *Panacci v. A1 Solar Power, Inc.*, No. 15–CV–00532–JCS, 2015 WL 3750112, at *6 (N.D. Cal. June 15, 2015).

Taking Hopkins' allegations as true, HomeLight's messages qualify as telephone solicitations under the TCPA. Hopkins' amended complaint alleges that he received multiple telephone calls from HomeLight offering to connect with a real estate agent to sell his home. He asserts that the purpose of these calls was to "promote and solicit . . . [Homelight's] service of matching home sellers with agents so that [it] could then earn referral fees." Dkt. 16 at 13. Hopkins contends that everything he alleges in his complaint is "exactly how [HomeLight] describes its business model directly on [its] website." Dkt. 20 at 27.

ORDER - 9

Hopkins further alleges that at no time did he provide HomeLight with consent to be contacted and that even if he did, that consent was expressly revoked when he told HomeLight to stop contacting him. Although HomeLight contends that it contacted Hopkins only in response to an inquiry, *see* Dkt. 21 at 14, it does not explain why those messages continued after he asked it to stop.

Construed in the light most favorable to Hopkins, these facts are sufficient to give rise to the plausible inference that HomeLight contacted Hopkins for the purpose of encouraging a purchase of a good or service without his consent. *See* 42 U.S.C. § 227(a)(4).

HomeLight's motion to dismiss Hopkins' Count One claim based on an alleged violation of 47 C.F.R. § 64.1200(c) is **DENIED**.

**D.     Hopkins states a claim under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d).**

HomeLight also moves to dismiss Hopkins' Count Two, arguing that Hopkins fails to allege a necessary element of 47 C.F.R. § 64.1200(d): that HomeLight failed to maintain internal DNC procedures prior to calling him.

Hopkins does not directly respond to this argument in his brief. However, Hopkins' complaint plausibly alleges that HomeLight did not maintain an internal DNC policy.

47 C.F.R. § 64.1200(d) requires "procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." Once a person or entity making automated telemarketing calls receives a request to stop such communications, "the person or entity must record the request and place the subscriber's

ORDER - 10

name, if provided, and telephone number on the do-not-call list at the time the request is made." *Id.* at § 64.1200(d)(3). These requests must be honored "without a reasonable time from the date such request is made . . . not to exceed ten (10) business days." *Id.* If internal procedures "are not in place prior to a call being made, the caller can be held liable." *Gulden v. Quicken Loans Inc.,* No. CV-16-00960-PHX-ROS, 2016 WL 9525223, at *3 (D. Ariz. May 31, 2016).

Hopkins' complaint alleges that HomeLight failed to maintain a written policy governing its internal DNC list and failed to inform and train its agents engaged in telemarketing on the existence and use of any such list. Dkt. 16 at 15. In support, Hopkins points to HomeLight's repeated messages after his requests that such communications stop. *Id.* Although HomeLight emphasizes that Hopkins does not allege that "he requested a copy of the caller's internal DNC policy," Dkt. 19 at 21, at this stage, that is not required to plausibly assert a claim. HomeLight continued to contact Hopkins more than ten days after his repeated requests to stop. Assuming these allegations are true, that is sufficient evidence to establish that HomeLight failed to maintain internal DNC procedures prior to contacting Hopkins.

HomeLight's motion to dismiss Hopkins' Count Two claim based on an alleged violation of 47 C.F.R. § 64.1200(d) is **DENIED**.

## II.   ORDER

Because Hopkins plausibly alleges sufficient facts to state a claim supporting Counts One and Two, HomeLight's motion to dismiss, Dkt. 19, is **DENIED**.

//

Dated this 13th day of July, 2026.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 12